IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL FIELDS, *individually and as representative of the Estate of Romny Alene Fields, and as next friend of E.F. and O.F.*, | § § § § | |
| Plaintiff, | § § | |
| v. | § | 1:16-CV-1249-RP |
| CAVCO INDUSTRIES, INC., et al., | § § § | |
| Defendants and Third-Party Plaintiffs, | § § § § | |
| v. | § § | |
| NATHAN GLENN COX *d/b/a Glenn's Mobile Home Service*, | § § § § | |
| Third-Party Plaintiff and Third-Party Defendant, | § § § | |
| v. | § § | |
| TRAVELERS INSURANCE, | § § | |
| Third-Party Defendant. | § § | |

# ORDER

Before the Court are Defendants Cavco Industries, Inc.; Palm Harbor Homes, Inc.; and Palm Harbor Villages, Inc.'s (collectively, "Defendants") Motion for Summary Judgment, (Dkt. 41), and Plaintiff Michael Fields' ("Fields") response. Having considered the parties' arguments, the factual record, and the relevant law, the Court grants Defendants' motion.

## I. BACKGROUND

This case arises out of an automotive collision that resulted in a person's death. Defendants build and sell manufactured homes; Third-Party Defendant Glenn's Mobile Home Service ("Glenn's") is a transportation company that was hired by one of the Defendants—it is unclear

which one—to drive a manufactured home divided into two sections from Fort Worth to San Antonio. (Mot. Summ. J., Dkt. 41, at 3). Daniel Brown ("Brown") and Thomas Cox ("Cox") are drivers Glenn's hired to tow the two sections. (Brown Dep., Dkt. 45-3, at 19:12–21:24). The two drove in tandem, with Cox towing his half of the home in the lead and Brown towing the other half behind Cox. (*Id.* at 19:16–25). Near Hutto, Texas, a wheel came loose from the trailer underneath Cox's half of the home and rolled into the road. (T. Cox Dep., Dkt. 45-2, at 44:18–45:1; Brown Dep., Dkt. 45-3, at 31:10–16). Brown saw the wheel come loose, alerted Cox, and the two drivers pulled over to the shoulder to collect and replace the tire. (T. Cox Dep., Dkt. 45-2, at 51:7–52:18; Brown Dep., Dkt. 45-3, at 31:2–19). Brown did not pull far enough off the road, however, and he left part of the home hanging out into a lane of traffic. (T. Cox Dep., Dkt. 45-2, at 37:6–17). An oncoming driver, Fields' wife, collided with the home and died as a result of injuries sustained in the crash. (*Id.* at 62:10–63:14).

Fields filed state-court actions against Glenn's, Cox, Brown, and Defendants for damages arising out of his wife's death. (Mot. Summ. J., Dkt. 41, at 3). Fields then settled with Glenn's, Cox, and Brown and brought this action against Defendants. (*Id.* at 3–4).

Fields' action contains claims for negligence and gross negligence. (Compl., Dkt. 1, at 4–8). Fields initially claimed that Defendants were negligent in eleven different ways, including by failing to properly train employees, negligently entrusting the trailer to incompetent drivers, failing to safely design the trailer with an appropriate bumper, and failing to "remedy the issue of their trailers losing wheels once they became aware of the problem." (*Id.* at 5–6). Fields also initially claimed that Defendants' failure to remedy the wheel-failure problem or install safe bumpers were grossly negligent. (*Id.* at 6–8).

By the summary judgment stage of this action, Fields had abandoned all but two theories of negligence: failure to remedy the known tire-failure problem and negligent entrustment. (Resp. Mot.

2

Summ. J., Dkt. 45, at 6–10). For the tire-failure theory, Fields offers evidence that it is not uncommon for recycled tires to go flat or come loose from manufactured home trailers. Cox testified at a deposition that he has had 17 trailer tires go flat or come loose on a single trip. (Cox. Dep., Dkt. 45-2, at 55:7–20). He testified that he has had a trip where a tire failed "every 10 or 15 miles" and he and his other driver ran out of spares. (*Id.* at 56:3–21). Tire failures—typically, flats—allegedly happen "more often than not," and Cox testified that he would expect a tire failure on a trip like the one at issue in this case. (*Id.* at 57:9–21). According to Pedro Rodriguez, a purported expert in the manufactured-housing industry, Palm Harbor was aware that wheel failures were a common problem. (Rodriguez Aff., Dkt. 45-5, at 3). Rodriguez states that recycled tires are known failure risks, and that the tires used on the trailers involved in this case were recycled. (*Id.*).

As for Fields' negligent-entrustment theory, Fields argues that the Glenn's drivers were incompetent because Glenn's had no rules for responding to a wheel failure and that Defendants knew that Glenn's lacked rules but did nothing to make sure Glenn's had appropriate rules. (Resp. Mot. Summ. J., Dkt. 45, at 9–10). Cox admits that Glenn's has no policy for how to deal with a loose tire. (Cox. Dep., Dkt. 45-2, at 30:25–31:4). Rodriguez states that Palm Harbor "failed to provide adequate training" to the Glenn's drivers. (Rodriguez Aff., Dkt. 45-5, at 3).

Defendants, meanwhile, argue that Fields' tire-failure negligence claim must fail because Fields has no evidence that this particular tire failure was caused by the companies' negligence. (Hr'g Arg., Dkt. 57). As for the negligent-entrustment claim, Defendants argue that the Glenn's drivers were properly licensed and had competent driving records. (Mot. Summ. J., Dkt. 41, at 12–13).

The parties participated in a hearing regarding the summary judgment motion on January 30, 2018. (Minute Entry, Dkt. 57).

3

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). The court must view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citation and quotation marks omitted). That said, a party "may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 256–57).

# III. DISCUSSION

Based on Fields' response to Defendants' motion, he maintains two separate theories to support his claims for negligence and gross negligence: failure to remedy the known tire-failure problem and negligent entrustment. (Pl.'s Resp. Mot. Summ. J., Dkt. 45, at 6–10). The Court will address each theory in turn.

## *A. Tire Failure*

Fields argues that Defendants "had a duty to use better wheels" and that they breached that duty "when they used recycled tires and axles on this mobile home." (*Id.* at 6–7). To be clear, Fields' claim is not that Defendants had a duty not to use the particular tire that came loose because it was defective; Fields has no evidence that it was. Neither Fields nor any witness in this case has inspected the tire. Fields has not deposed any witness from Defendants who might have knowledge of the tire's condition. Other than Cox testifying at deposition that he had been "driving normal[ly]" that day, there is no evidence that the tire failure was not caused by a condition on the road or driver error.

Instead, Fields' claim is that Defendants had a duty not to use recycled tires at all. Fields says that recycled wheels and axles are "inherently dangerous" because repeated use wears down the components. (*Id.* at 8). Indeed, the only evidence about the loose tire or the axle to which it was connected is that both were recycled, which Rodriguez concluded after reviewing an invoice. (Rodriguez Aff., Dkt. 45-5, at 3). But Rodriguez admits that he has not inspected the trailer, the tire, or the axle at issue in this case, (*id.* at 1), and thus can only speculate that the tire and axle were "more than likely . . . unsafe to use." (*Id.* at 3).

Whether a duty exists under a given set of circumstances is a question of law for the court. *Vasquez v. S. Tire Mart, LLC*, 393 S.W.3d 814, 818 (Tex. App.—El Paso 2012, no pet.). "In order to determine state law, federal courts look to final decisions of the highest court of the state. When

5

there is no ruling by the state's highest court, it is the duty of the federal court to determine[,] as best it can, what the highest court of the state would decide." *Transcon. Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). "In making an *Erie* guess in the absence of a ruling from the state's highest court, [a federal court] may look to the decisions of intermediate appellate state courts for guidance." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

Although the Texas Supreme Court has never addressed whether a duty exists in a case such as this, a Texas appellate court has concluded that a tire installer owed no duty in a case with similar circumstances. *Vasquez*, 393 S.W.3d at 820. In *Vasquez*, a garbage truck tire blew out, causing an accident in which the driver was injured. *Id.* at 816. The driver sued the tire installer, alleging that it was negligent to install a retread tire because retread tires are not fit for ordinary use by a garbage truck. *Id.* at 817. Specifically, the driver argued that the installer breached a duty to install new tires instead of retread tires. *Id.* The court found no evidence that the tire was negligently installed or that the tire was damaged or otherwise unsuitable for use. *Id.* at 820. Rather, the only evidence that might have given rise to a duty was an instruction by a garbage company manager to the installer not to use retread tires. *Id.* at 818. The court held that that evidence was insufficient to give rise to a general duty not to install retread tires. *Id.* at 820.

This case presents similar facts. Fields' only evidence is that Defendants installed a recycled tire on the trailer and that recycled tires fail with some undefined but significant degree of frequency. (Rodriguez Aff., Dkt. 45-5, at 1–3). But, as in *Vasquez*, that evidence is insufficient to give rise to a duty to avoid recycled tires altogether. Fields' own witness admits that federal regulations permit the use of recycled tires. (*Id.* at 1). That witness's affidavit fails to establish that recycled tires are so hazardous to use that Defendants have a duty never to use them. Rodriguez claims that wheel failures are a "well known issue" in the industry, but provides no evidence to suggest how commonly recycled tires and axles fail by coming loose or going flat. (*Id.*). Moreover, Rodriguez

6

admits that driver error is a "common cause" of tire failure. (*Id.* at 2). Rodriguez's affidavit—the sole source of evidence that recycled tires might be inherently dangerous—establishes only that recycled tires and axles might be more prone to failure. It does not establish that they are so overwhelmingly prone to failure that even the installation of a lightly used and good-condition recycled tire or axle is so dangerous as to generate a legal duty. In light of *Vasquez*, this evidence is not strong enough to persuade the Court that Texas law recognizes a general duty not to install recycled tires or axles onto manufactured home trailers. And because Defendants have not violated any duty to Fields, his tire-failure claim must fail as a matter of law. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (holding that, in a negligence action, a defendant is entitled to judgment as a matter of law if the defendant owes no duty to the plaintiff).

### B. Negligent Entrustment

Fields' second negligence theory is that Defendants are liable for negligent entrustment "because they gave a known danger to an unskilled contractor." (Resp. Mot. Summ. J., Dkt. 45, at 9). Fields argues that Glenn's had "no rules" about how drivers should respond to wheel failures and that Defendants "did nothing to make sure they had such rules." (*Id.* at 9–10). Defendants respond that there is no evidence that the Glenn's drivers were incompetent or reckless, (Mot. Summ. J., Dkt. 41, at 12–13), and the Court agrees.

To establish liability under this theory, Fields must show that: (1) Defendants entrusted the vehicle to Glenn's; (2) Glenn's employed unlicensed, incompetent, or reckless drivers; (3) at the time of the entrustment, Defendants knew or should have known that Glenn's employed unlicensed, incompetent, or reckless drivers; (4) a Glenn's driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007). Proving that Defendants should have known that a Glenn's driver would drive recklessly or incompetently requires more than proving that Defendants should have

7

known that a Glenn's driver would drive negligently. *See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 910 (Tex. 2016) ("In a sense, the name 'negligent entrustment' can be misleading, because the claim requires a showing of more than just general negligence. . . . [A plaintiff] ha[s] to prove that [the operator] was incompetent to operate the forklift or would operate it recklessly, and that [the employer] knew or should have known of [the operator's] incompetence or recklessness.").

Fields' negligent entrustment claim fails because the summary judgment evidence does not establish that Defendants should have known that Cox or Brown were reckless or incompetent.[1] According to Nathan Glenn Cox, the owner of Glenn's, no Glenn's driver had ever been involved in a major accident.[2] (N. Cox. Dep., Dkt. 45-1, at 35:6–16). Brown testified that he was "very experienced" in moving manufactured homes after doing so for "many, many years." (Brown Dep., Dkt. 45-3, at 17:4–9). Thomas Cox testified that he is prepared to handle flat tires or axle failures; he has spare tires and axles, tools to fix or replace them, and experience doing so. (T. Cox Dep., Dkt. 45-2, at 53:17–60:23). The lack of a formal policy on how to handle loose tires is not sufficient evidence that the Glenn's drivers were reckless or incompetent in light of their extensive experience transporting manufactured homes and dealing with tire failures without incident. *See 4Front*, 505 S.W.3d at 911 (holding that a warehouse company should not have known that an unlicensed and untrained forklift driver would operate the vehicle incompetently or recklessly when the driver had "safely operated the forklift at [the company's] facility before"). Because Fields' evidence fails to create a genuine issue of material fact as to whether Defendants should have known the Glenn's drivers would haul the manufactured home trailers incompetently or recklessly, Defendants are entitled to summary judgment on this claim, as well.

---

[1] The parties agree that Cox and Brown were properly licensed at the time of the collision. (Mot. Summ. J., Dkt. 41, at 12; Pl.'s Resp. Mot. Summ. J., Dkt. 45, at 10).

[2] More specifically, Cox testified that he was the only Glenn's driver ever to be involved in an accident, which consisted of bumping the side of a car as he was rounding a corner. (N. Cox. Dep., Dkt. 45-1, at 35:11–16)

8

## IV. CONCLUSION

For these reasons, Defendants are entitled to summary judgment on each of Fields' claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 41), is **GRANTED**. Fields' claims are therefore **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on March 6, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE